DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 EAST BROADWAY BLVD., SUITE 200
TUCSON, AZ 85716-5300
(520) 322-5000

Denise M. Bainton (AZ # 9009)
dbainton@dmyl.com
Sesaly O. Stamps (AZ # 25773)
sstamps@dmyl.com
Attorneys for Defendant

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| GA, a minor, by and through her parent, Lara Scott, <br><br> Plaintiffs, <br><br> vs. <br><br> Tanque Verde Unified School District, <br><br> Defendant. | NO. 4:17-cv-00436-JAS <br><br> **DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION FOR CONSIDERATION OF ADDITIONAL EVIDENCE** <br><br> (Assigned to Hon. James A. Soto) |

Defendant, Tanque Verde Unified School District ("District" or "Defendant"), by and through undersigned counsel, hereby submits this Response to Plaintiffs' Motion for Consideration of Additional Evidence. This Response is supported by the following Memorandum of Points and Authorities.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. Introduction

Plaintiffs request that the Court consider evidence that was not submitted for consideration at the hearing before the Administrative Law Judge ("ALJ"). As explained below, none of this proffered evidence should be considered by this Court because it is (a)

unnecessarily cumulative to the evidence that was presented to the ALJ and/or (b) Plaintiffs could have obtained and presented the evidence to the ALJ but did not.

This matter was originally set for a five-day hearing. Plaintiffs took up the first four and a half days putting on ten witnesses and introducing several hundred pages of documentary evidence out of the almost 4,000 pages in their exhibit books. When Plaintiffs rested their case, the ALJ set an additional four days for the District to put on its case. The District used one and a half days and rested. After closing briefs were submitted, the ALJ found that Student G.A. ("Student") had not been denied a free and appropriate public education ("FAPE"). The evidence Plaintiffs now seek to introduce does not furnish any basis for overturning that decision, is duplicative of evidence presented at the hearing and/or could have been presented at the hearing. Plaintiffs' motion represents nothing more than a needless expansion of this litigation.

## II.  Legal Standard

The Court may hear additional evidence at the request of a party pursuant to 20 U.S.C. § 1415(e). "[T]his clause does not authorize witnesses at trial to repeat or embellish their prior administrative hearing testimony." *Ojai Unified School Dist. v. Jackson*, 4 F.3d 1467, 1473 (9th Cir. 1993) (internal citations and quotation marks omitted). The reasons for allowing additional evidence include "gaps in the administrative transcript owing to mechanical failure, unavailability of a witness, an improper exclusion of evidence by the administrative agency, and evidence concerning relevant events occurring subsequent to the administrative hearing." *Id.* The Ninth Circuit Court of Appeals has held that "[t]he determination of what is 'additional' evidence must be left to the discretion of the trial court which must be careful not to allow such evidence to change the character of the hearing from one of review to a trial *de novo*." *Id.* (adopting standard from *Town of Burlington v. Dep't. of Educ.*, 736 F.2d 773, 791 (1st Cir. 1984)).

## III. Analysis of Admissibility of New Evidence

### A. The Court should not allow supplementation of evidence regarding the U.S. Department of Education's Memorandum dated May 22, 2017.

Plaintiff seeks to introduce a memorandum released by the United States Department of Education, Office of Special Education and Rehabilitative Services ("OSEP") regarding "Eligibility Determinations for Children Suspected of Having a Visual Impairment Including Blindness under the Individuals with Disabilities Education Act" (hereinafter the "OSEP Memo"). *See* Exhibit A to Plaintiffs' Motion. The OSEP Memo sets forth the IDEA's definition of "visual impairment including blindness," which means "an impairment in vision, that even with correction, adversely affects a child's educational performance." 34 CFR § 300.8(c)(13). The OSEP Memo also notes that the term, as defined by the IDEA, includes both partial sight and blindness. The OSEP Memo then goes on to explain that when a state sets criteria for determining eligibility under the category of visual impairment, the state "must not narrow the definitions in the IDEA."

The ALJ made the following factual findings regarding Student's vision:

> 34. On or about October 7, 2015, Tanya Polec, OD, FCOVD, gave Student a Functional Neuro-Optometric Evaluation consisting of an examination and analysis of ocular health, structure, refractive status, visual-motor coordination, visual-perceptual skills and dynamic function of the visual system. In a report dated October 28, 2015, Student's distance visual acuity was reported to be 20/25 (right eye) and 20/30 (left eye), and Student's near visual acuity was reported to be 20/20 (right eye) and 20/25 (left eye). Student was found to have binocular dysfunction and pursuit dysfunction. Recommendations in the report included one vision therapy session per week for three months with a reevaluation to follow. The recommendations did not include that Student should be evaluated or receive services at Respondent School District from a teacher for the visually impaired.
>
> . . .

DeConcini McDonald Yetwin & Lacy, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

*GA/Lara Scott v. Tanque Verde Unified School District*; Case No. 4:17-cv-00436   Page 3 of 13
\\intdmyl.com\dmylfs\edsi\files\docs\ARIZ31\170709\DOC\1281367.DOCX

3

> 43. The MET report indicated that Student passed hearing and vision screenings performed by Respondent School District. It was also noted that Student was recently diagnosed with binocular dysfunction, was prescribed .5 magnified reading lenses, and was participating in vision therapy outside of school. The MET report concluded that Student's *"current difficulties in school are not primarily the result of adverse impact"* of any hearing or vision deficits. (Emphasis added.)
>
> 56. Amy Thomas, OD, FCOVD, prepared a Teacher Suggestion List dated February 25, 2016, with 12 recommendations that could be implemented to assist Student in the classroom. The recommendations did not include that Student should be evaluated or receive services at Respondent School District from a teacher for the visually impaired. Dr. Thomas provided the Teacher Suggestion List to Parent for Parent to deliver to Respondent School District. Parent indicated she did not receive the Teacher Suggestion List until March 1, 2016, and acknowledged she did not deliver it to Respondent School District.

*See* ALJ Decision, pp. 10-11, 13-14.

The ALJ also made the following specific conclusions of law regarding Plaintiffs' claims that the District failed to evaluate Student as a child with a visual impairment:

> 6. The IDEA defines "visual impairment" as "an impairment in vision that, even with correction, adversely affects a child's educational performance."
> 7. Student passed the vision screening by Respondent School District and was prescribed .5 magnified reading lenses by an outside provider.
> 8. No evidence was submitted to establish that Student had a visual impairment as defined by the IDEA. Rather, the evidence established that Student had binocular dysfunction and pursuit dysfunction. Respondent School District categorized these issues as motor planning issues to be addressed in Adaptive PE, and nothing in evidence, including the reports from Dr. Polec or Dr. Thomas, refuted that categorization.
> 9. Thus, Petitioners failed to establish that Respondent School District improperly failed to evaluate Student for visual impairments as this was not an area of suspected disability.

*See* ALJ Decision, pp. 17-18. With respect to the Plaintiffs' claim that the District failed to find Student to be eligible as a student with a visual impairment, the ALJ concluded:

"Petitioners did not present any evidence establishing Student had a visual impairment or hearing impairment. Thus, Petitioners failed to establish that Respondent School District improperly failed to find Student eligible for special education in those areas." *See* ALJ Decision, p. 19.

The foregoing establishes that the ALJ employed the same definition of "visual impairment" that is set forth in both the IDEA and in the OSEP Memo. The ALJ did not indicate she was considering any kind of limiting criteria adopted by the state of Arizona or otherwise. Rather, she found that the evidence presented did not establish that Student had a visual impairment as that term is defined in both the IDEA and in the OSEP Memo. As noted in the OSEP Memo, the key to determining eligibility under the category of vision impairment is to determine whether "the child's visual functioning adversely affects his or her educational performance." *See* GA_Appeal 000003. This is simply a re-phrasing of the IDEA definition that a visual impairment is a condition that "even with correction, adversely affects that child's educational performance." 34 CFR § 300.8(c)(13). One of the ALJ findings of fact set forth above was that the MET concluded Student's difficulties at school were *not* the result of a vision deficit. Plaintiffs may disagree with this finding and are anticipated to argue this issue in their briefing on the merits of this action to the Court. But the OSEP Memo does not add anything to the analysis of whether the ALJ's decision was erroneous because the OSEP Memo employs the same definition of "visual impairment" that the ALJ adopted. Thus, there is no reason to consider the OSEP Memo in this forum.

**B.   The Court should not allow supplementation of evidence regarding additional District documents.**

Plaintiffs assert that the District failed to disclose certain documents in response to their request for Student's educational record. These documents consist of a (1) a timeline

DeConcini McDonald Yetwin & Lacy, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

of certain information regarding Student that was prepared on September 5, 2016, by the District Special Education Director in conjunction with responding to an OCR complaint by Plaintiffs ("Timeline"); (2) an email from one of Student's teachers, Suzanne Hensel dated March 2, 2016 ("Hensel Email"); and (3) an email from an audiologist, Dr. Linda Norrix, who evaluated Student dated November 18, 2015 ("Norrix email"). Plaintiffs assert that if they had had these emails at the time of the hearing, they would have submitted them as evidence in support of various claims that the District failed to provide FAPE and failed to disclose all of Student's education records in response to Plaintiffs' request. All of Plaintiffs' arguments are without merit.

First, the documents at issue do not constitute "education records" for purposes of the IDEA. Under the IDEA, "education records" are the same as those under the Family Educational Rights and Privacy Act ("FERPA"). 34 C.F.R. § 300.611. Under FERPA, education records are those records that are (1) directly related to a student, and (2) maintained by an education agency or institution or by a party acting for an agency or institution. 20 U.S.C. § 1232g(a)(4); 34 C.F.R. § 99.3. In *Owasso Independent School District No. 1-011 v. Falvo*, 534 U.S. 426, 434 (2002), the United States Supreme Court stated that the word "'maintain' suggests FERPA records will be kept in a filing cabinet in a records room at the school or on a permanent secure database, perhaps even after the student is no longer enrolled." In *S.A. v. Tulare County Office of Education,* 2009 WL 3296653 (E.D. Cal. Oct. 6, 2009), the District Court for the Eastern District of California held that emails were not part of a student's educational record, relying heavily on *Owasso*. The court found emails to have a "fleeting" nature because they may be sent, received, and deleted within moments. The court also found the student's suggestion that all emails regarding student are "maintained" 'in the same way the registrar maintains a student's folder in a permanent file'" to be "fanciful." *Id.*

*GA/Lara Scott v. Tanque Verde Unified School District*; Case No. 4:17-cv-00436    Page 6 of 13
\\intdmyl.com\dmylfs\edsi\files\docs\ARIZ31\170709\DOC\1281367.DOCX

6

Here, the ALJ concluded that certain emails—different than the emails Plaintiffs now seek to admit—were not education records because Plaintiffs failed to establish they were being maintained by the District. *See* ALJ Decision, page 34. The same conclusion must be reached regarding the emails and Timeline that Plaintiffs now seek to have admitted. The Hensel Email, dated March 2, 2016, was generated after Student was withdrawn from the District. As noted above, the Timeline was created in preparation for responding to Plaintiffs' OCR complaint on September 5, 2016, which was over six months after Student was withdrawn. The Norrix Email was generated while Student was still enrolled at the District, but Plaintiffs have offered no evidence that it, or either of the other documents, were or are being maintained in Student's file.

Second, these documents were all created <u>after</u> Plaintiffs' request for Student's education records, which was dated November 12, 2015. In response to that request, the District provided a voluminous amount of emails about Student that were located by running a search of the District's email server using certain search terms. The District did not have to provide these emails, since they are not education records under FERPA or the IDEA. The District produced the emails as a courtesy. If Plaintiffs wanted to obtain documents that were created after the date of their initial request, they could have submitted additional requests at any time before the hearing. They did not do that. Accordingly, it is Plaintiffs' fault that they did not have these documents to submit at the hearing.

Third, these documents are cumulative to the testimony and documentary evidence already produced at the hearing. The Hensel Email does not establish any inconsistency in Suzanne Hensel's testimony or support any other argument raised by Plaintiffs. In the Hensel Email, Ms. Hensel notes that Student did not participate in a particular classroom activity about dragonflies. Plaintiffs selectively quote certain language from the hearing transcript to try to show Student *did* participate in this activity: "So I asked GA to get out

*GA/Lara Scott v. Tanque Verde Unified School District*; Case No. 4:17-cv-00436   Page 7 of 13
\\intdmyl.com\dmylfs\edsi\files\docs\ARIZ31\170709\DOC\1281367.DOCX

7

her dragonfly information out of her folder." TR 1250:18-19. Plaintiff ignores the very next question and answer:

> Q: And did she?
>
> A: I didn't—I don't think she did. I'm not really sure if she pulled it out. I was trying to finish up the lesson.

TR 1250:21-23. This testimony is entirely consistent with the statements in the Hensel Email that Student "did not participate in this activity because the material was above grade level."

On this issue, the ALJ made the following findings of fact:

> 28. Initial Third Grade Teacher testified that she started the year giving Student the same work as other students in the class, but she reduced the level of work Student received in the general education classroom. Initial Third Grade Teacher stated that Student went to the Resource room and the majority of Student's work and tests were done in the Resource room.
> . . .
> 29. . . . Initial Third Grade Teacher stated that Student returned to the classroom when she was trying to finish up a lesson on dragonflies, so she did not put the FM system on at that time.

ALJ Decision, p. 9. The fact that Student had a folder related to the Dragonfly lesson that was being taught to the entire class is not evidence that Student should have been participating in the whole group instruction or that Ms. Hensel should have been using the FM system during that lesson. Rather, as noted by the ALJ, Ms. Hensel's testified that Student did most of her work in the Resource room. Because the Hensel email adds nothing to the record that was not already established in the hearing, it should not be admitted or considered now.

The Norrix Email also adds nothing to the record that was not established at the hearing. In this email, Dr. Norrix notes as follows:

> I take a very functional approach to my assessments as I don't think we have the best tools to 'diagnose' an auditory processing disorder and there

> is little consensus for what an auditory processing disorder is or what it involves. Cognitive resources and attention are all part of how we process so it is difficult to separate out what is and how much is auditory and what is and how much is "other."

Plaintiffs clearly misinterpret the email to suggest Dr. Norrix was saying she cannot diagnose auditory processing disorders because *she* does not have the "best tools" to do so but that such tools do exist. A plain reading of the Norrix Email indicates that what Dr. Norrix is actually explaining is that audiologists have not reached a consensus on what an auditory processing disorder is and that audiologists in general do not have the best tools to render a diagnosis.

In any event, it is irrelevant which interpretation is correct, because the District did not alter its approach to Student's needs based on whether there was or was not an actual diagnosis of auditory processing disorder. Dr. Norrix herself states towards the end of the email:

> She definitely has difficulty with understanding speech and noise and other complex auditory tasks but the listening/processing issues may be part of the bigger picture. I am pleased that her team and school is able to continue to proved the FM system regardless of the diagnosis as the important question is about how she is functioning and what works for her in every day and classroom environment.

Exhibit D to Plaintiff's Motion.

The ALJ specifically found that Student had been diagnosed with an auditory processing disorder. ALJ Decision, p. 4, ¶1. The ALJ also found that Student's IEPs provided for significant use of an FM system at school and that the District used the FM system with Student in the classroom. *See* ALJ Decision, pp. 25, ¶¶54-55; 28-29, ¶¶ 73-80. It is possible that if the Norrix Email had been presented to the ALJ, this might have influenced her finding as to whether Student did or did not have an auditory processing disorder. But the ALJ did not know about this email and still found Student had been

*GA/Lara Scott v. Tanque Verde Unified School District*; Case No. 4:17-cv-00436   Page 9 of 13
\\intdmyl.com\dmylfs\edsi\files\docs\ARIZ31\170709\DOC\1281367.DOCX

9

diagnosed with the disorder. Further, the Norrix Email is fully consistent with and duplicative of other evidence presented at trial and relied on by the ALJ that the District used the FM system with Student as recommended. Because the Norrix Email adds nothing to the record and is cumulative with other evidence actually presented, it should not be admitted.

Finally, the Timeline should also not be admitted as it also adds nothing to the record. Plaintiffs argue it shows inconsistencies as to how the FM system was being used. Plaintiffs spent significant time at the hearing hashing and rehashing what each IEP said about the FM system and whether it was being used with fidelity. The ALJ concluded:

> 54.   [T]he change in wording from one IEP to the next did not alter the use of the FM system.
> . . .
> 80.   The weight of the credible evidence established that the FM system was used appropriately by Respondent School District staff. While there may have been times that the FM system was not in use temporarily because of mechanical issues or the content of the class, such temporary failures do not constitute a wholesale failure to implement the supplementary aids and services.

ALJ Decision, pp. 25, 29. Plaintiffs may disagree with the ALJ's conclusions regarding what the IEPs provided regarding use of the FM system and how it was implemented, but the brief notations regarding use of the FM system on the Timeline do not add or change anything in the ALJ's analysis and will not aid the Court in resolving this issue. Further, the Timeline constitutes double hearsay because it draws on information contained within other documents admitted at the hearing, including the Student's IEPs and witness testimony presented at the hearing. Although, the rules of evidence are not binding on the ALJ, the document would be entitled to little if any weight on the issue of the FM system. The testimony and documents actually presented at the hearing are the best evidence on this issue.

### C. The Court should not allow supplementation of evidence regarding the report from Able Kids.

Plaintiffs seek to have the Court consider a report dated May 22, 2017, which diagnoses Student as having an auditory processing disorder and states that Student would benefit from the use of an FM system in the classroom. As noted above, the ALJ found Student had been diagnosed with an auditory processing disorder. *See* ALJ Decision, p. 4, ¶ 1. The ALJ also found that Student's IEPs provided for significant use of an FM system at school and that the District used the FM system with Student in the classroom. *See* ALJ Decision, pp. 25, ¶¶54-55; 28-29, ¶¶73-80. Accordingly, the report that Plaintiffs now seek to admit adds nothing to the evidence that was not already presented and considered by the ALJ.

Plaintiffs also disingenuously suggest that if they had obtained the Norrix Email earlier, they would have had the Able Kids evaluation done earlier. The Able Kids Evaluation is dated May 22, 2017. Plaintiffs admit in their Motion that they obtained the Norrix Email on December 12, 2017. Plaintiffs do not explain what actually prompted them to have the Able Kids evaluation done, but obviously this decision was not prompted by an email that they did not know about until over five months after that evaluation was complete. In any event, as explained above, the District had no obligation to produce the Norrix Email in response to Plaintiffs' request for Student's education records and could not have done so since the email did not exist at the time of the request.

### IV. If the Court allows supplementation of evidence as requested by Plaintiffs, the District requests the opportunity to present rebuttal evidence.

In the event the Court permits Plaintiffs to supplement the evidence as requested, the District requests the opportunity to rebut that evidence with additional testimony and documents. Specifically, the District would call the following witnesses:

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

### A. Dr. Jayne Cooper

Dr. Cooper is the District's psychologist who conducted a cognitive evaluation of Student while she was enrolled at the District and who participated as a member of Student's IEP team. Dr. Cooper will testify regarding the Norrix Email, additional communications she had with Dr. Norrix regarding Student, her review of Student's past evaluations for auditory processing disorder, how Student's IEPs addressed the issue of auditory processing disorder, and her review of the new evaluation that Plaintiffs seek to admit. In addition to Dr. Cooper's testimony, the District will submit additional emails between Dr. Cooper and Dr. Norrix that provide greater context to their discussions about the auditory processing issue. These emails are attached as Exhibit A to this Response.

Dr. Cooper will also testify regarding her review of the OSEP Memo and her understanding of how it impacts (or does not impact) the District's process for determining eligibility of students under the category of visual impairment. Dr. Cooper will review the information considered by the IEP team with respect to Student's vision, explain why Student was not suspected of having a vision impairment, and explain how this conclusion is consistent with the requirements set forth in the OSEP Memo.

### B. Suzanne Hensel

Ms. Hensel was Student's initial teacher in third grade in the 2015-2016 school year. Ms. Hensel will testify regarding the Hensel Email. Ms. Hensel will explain the context for that email and how the statements in the email are not inconsistent with her testimony at the hearing.

### C. Sally Glennon

Ms. Glennon is the District's Special Education Director. Ms. Glennon will testify regarding the Timeline document and explain how and when this document was created. She will explain what information is included in the document and why. Ms. Glennon will

also testify regarding the request for education records made by Plaintiffs in November 12, 2015, and why the emails and Timeline now at issue were not included in the response to that request.

## V.     Conclusion

In light of the foregoing, Defendant respectfully requests that the Plaintiffs' Motion for Consideration of Additional Evidence be denied.  In the alternative, if the Motion is granted, Defendant requests the opportunity to present additional testimony and documents as described above to rebut the additional evidence offered by Plaintiffs.

DATED this 30th day of January, 2018.

DECONCINI MCDONALD YETWIN & LACY, P.C.

By:  /s/  Sesaly O. Stamps
Denise M. Bainton
Sesaly O. Stamps
2525 E. Broadway Blvd., Suite 200
Tucson, AZ 85716-5300
Attorneys for Defendant

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing First Amended Answer was served via CM/ECF e-file system on this 30th day of January, 2018, addressed to the following:

Robert T. Mills            rmills@amwolawaz.com; docket@amwolawaz.com
Sean A. Woods          swoods@millsandwoods.com; docket@amwolawaz.com

By: */s/ Edwina Campbell*